UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                                            )
SECURITIES AND EXCHANGE COMMISSION,   )
                                                            )
                    Plaintiff,                         )
                                                            )
          v.                                              )          Case No.
                                                            )
BOLTON SECURITIES CORPORATION d/b/a   )          JURY TRIAL DEMANDED
BOLTON GLOBAL ASSET MANAGEMENT,      )
                                                            )
                    Defendant.                      )
_____)

## COMPLAINT

Plaintiff, the United States Securities and Exchange Commission ("Commission" or "SEC"), alleges the following against defendant, Bolton Securities Corporation d/b/a Bolton Global Asset Management ("Bolton Securities"), and hereby demands a jury trial:

## PRELIMINARY STATEMENT

1.      Bolton Securities is an SEC-registered investment adviser that manages approximately $2 billion in assets for thousands of advisory clients. As an investment adviser, Bolton Securities owes its advisory clients a fiduciary duty to act in its clients' best interests and to fully disclose all material facts about the advisory relationship, including disclosing any conflicts of interest that might cause Bolton Securities to put its own interests before those of its clients so that its clients can decide whether to give informed consent to these conflicts. Further, Bolton Securities is forbidden from engaging in securities transactions with its own clients (commonly referred to as "principal trading"), either directly or through the use of an affiliated broker-dealer with which it is under common control, unless it makes appropriate pre-trading disclosure to clients and obtains their consent to the proposed transactions. Bolton Securities,

however, violated federal law by (i) failing to tell clients about material conflicts of interest it had in advising clients to invest in or to hold mutual fund shares that paid Bolton Securities' affiliated broker-dealer substantial amounts of fees, and (ii) engaging in principal trading with clients through its affiliated broker-dealer—which was under common control with Bolton Securities—without giving the clients proper disclosure or obtaining required consent.

2.      By virtue of its failures to disclose material conflicts of interest, which are detailed further herein, Bolton Securities negligently breached its fiduciary duty to its advisory clients in violation of Section 206(2) of the Investment Advisers Act of 1940 ("Advisers Act"). Further, by knowingly engaging in fixed income trades through the principal trading account of an affiliated broker-dealer that was under common control, with insufficient prior disclosure to, and no consent obtained from, its advisory clients, Bolton Securities violated Section 206(3) of the Advisers Act. Finally, by failing to adopt and to implement written policies and procedures reasonably designed to ensure that Bolton Securities disclosed the conflicts of interest and obtained the required informed client consent prior to engaging in principal trading, Bolton Securities violated Section 206(4) of the Advisers Act and Rule 206(4)-7 thereunder.

3.      The Commission seeks: (a) a permanent injunction prohibiting Bolton Securities from further violations of the Advisers Act; (b) an order that Bolton Securities disgorge its unjust enrichment, plus prejudgment interest; and (c) imposition of a civil penalty due to the nature of Bolton Securities' breach of fiduciary obligation.

## JURISDICTION

4.      The Commission seeks a permanent injunction and disgorgement pursuant to Section 209(d) of the Advisers Act [15 U.S.C. § 80b-9(d)].  The Commission seeks the

imposition of a civil penalty pursuant to Section 209(e) of the Advisers Act [15 U.S.C. § 80b-9(e)].

5.        This Court has jurisdiction over this action pursuant to Sections 209(d), 209(e) and 214(a) of the Advisers Act [15 U.S.C. §§ 80b-9(d), 80b-9(e), 80b-14(a)].  Venue is proper in this District because Bolton Securities transacted business and maintains a principal place of business in Massachusetts.

6.        In connection with the conduct described in this Complaint, Bolton Securities directly or indirectly made use of the mails or the means or instrumentalities of interstate commerce.

## DEFENDANT

7.        **Bolton Securities**, which has is its principal office in Bolton, Massachusetts, is registered with the Commission as both an investment adviser and broker-dealer.  As of April 2019, Bolton Securities, in its role as an investment adviser, reported approximately $2 billion in assets under management, with approximately $441 million of those assets owned by persons who are non-high-net-worth retail clients, meaning clients with less than $1 million in assets under management or a net worth of less than $2 million.

## OTHER RELEVANT ENTITIES

8.        **Bolton Global Capital Corporation ("Bolton Global Capital"),** formerly known as Delta Equity Services Corporation, is registered with the Commission as a broker-dealer.  Bolton Securities' SEC-mandated client brochure identifies Bolton Global Capital as an "affiliated broker-dealer."

9.      **Bolton Capital Group, Inc. ("BCG")** is a Massachusetts corporation in the business of offering management services to Bolton Securities and Bolton Global Capital. BCG is not registered with the Commission in any capacity.

## STATEMENT OF FACTS

### I.      Bolton Securities' Advisory Business

10.     Bolton Securities offers investment adviser services through its supervised persons who are investment adviser representatives ("IARs") and are located in several states throughout the United States. Through these IARs, Bolton Securities offers its retail advisory clients investment advisory services including asset management.

11.     Most clients who receive asset management services generally pay management fees calculated as a percentage of their assets under management. These fees are periodically deducted from clients' advisory accounts.

12.     Bolton Securities offers investment programs to advisory clients in which Bolton Global Capital provides brokerage services such as holding client accounts and executing client trades as an introducing broker-dealer. Bolton Securities generally executes client trades itself, in its capacity as a registered broker-dealer, or through Bolton Global Capital.

13.     Bolton's Securities' relationship with Bolton Global Capital is not a mere matter of Bolton Securities using Bolton Global Capital as a broker. These entities substantially overlap each other and are under common control.

14.     For example, as a financial firm, Bolton Securities representatives are often registered in two relevant capacities: first, as an IAR and a broker-dealer registered representative with Bolton Securities, and second, as a broker-dealer registered representative with Bolton Global Capital. With such dual registration, IARs are capable of offering either

brokerage or advisory services on behalf of Bolton Securities and brokerage services on behalf of Bolton Global Capital.

15.     A husband and wife hold, either directly or indirectly, controlling ownership of Bolton Securities and Bolton Global Capital.  Further, the entities' common executive officers (President and General Counsel, Chief Compliance Officer, and Chief Financial Officer) hold minority ownership interests of both entities and supervise the activities of the affiliated Bolton entities, and the representatives working on their behalf.  Indeed, both affiliated entities and their common executive officers operate out of the same location in Bolton, Massachusetts and market themselves on the same Internet website.

16.     Husband maintains operational and economic control of Bolton Securities and Bolton Global Capital through a third corporate entity, BCG.  Husband solely owns BCG and is the sole executive officer of that entity.  BCG has separate management agreements with Bolton Securities and Bolton Global Capital.  Pursuant to these management agreements, BCG provides the personnel and pays the overhead expenses incurred to conduct the operations of Bolton Securities and Bolton Global Capital.  In return, Bolton Securities and Bolton Global Capital pay BCG management fees computed as repayment of those personnel costs and overhead expenses plus an additional fee, which represents a share of the profits of these firms.

17.     Consistent with this common control held by the husband, wife and the entities' common executive officers, Bolton Securities has identified Bolton Global Capital as an affiliated broker-dealer in its public filings made to the Commission since at least March 2014.

## II.     Mutual Fund Share Classes and Rule 12b-1 Fees

18.     Mutual funds are common investments for individuals.  A mutual fund pools money from many investors and invests the money in securities or other assets.  A mutual fund

frequently offers investors different "share classes." Each class represents an interest in the same "pool" (or investment portfolio) of securities and other assets, but each class will have a different fee and expense structure and, therefore, different net investment returns for the investor. A single mutual fund will often have share classes with different expense ratios, with the share classes that have higher total annual fund operating expenses generally having lower returns than share classes with lower total annual fund operating expenses. For example, some share classes have higher expenses because they pay brokers more for selling or servicing that particular share class. In contrast, other share classes of the same fund may have lower expenses because they do not pay brokers this additional compensation. In other words, an individual investor may pay more, or less, for precisely the same mutual fund investment, depending on the share class. Fees and expenses are an important consideration in selecting a mutual fund share class because these charges lower an investor's returns.

19.     Some mutual fund share classes offered to retail investment clients charge fees pursuant to Rule 12b-1 under the Investment Company Act of 1940 to cover fund distribution and sometimes certain shareholder services. The 12b-1 fees are charged throughout the life of the mutual fund investment. They are deducted on an ongoing basis from the mutual fund's assets. Mutual funds pay these fees to the fund's distributor or principal underwriter, which generally remits the 12b-1 fees to the broker-dealer that distributed or sold the shares.

20.     Many mutual funds also offer other share classes that do not carry 12b-1 fees ("Non-12b-1 Shares"). Such Non-12b-1 Shares are frequently available to retail clients of investment advisers such as Bolton Securities. The terms and eligibility requirements for any particular share class are described in a mutual fund's prospectus. Non-12b-1 Shares do not remit an ongoing distribution fee to the broker. Therefore, Non-12b-1 Shares of a fund typically

have lower total annual fund operating expenses than the same fund's share classes that carry 12b-1 fees. As a consequence, investors who hold Non-12b-1 Shares typically earn higher returns over time than investors who hold shares of the same fund that carry 12b-1 fees. If a mutual fund offers Non-12b-1 Shares, and the investor is eligible to own them, it generally is better for the investor to purchase or hold the Non-12b-1 Shares.

## III.   Bolton Securities' Mutual Fund Investment Management Practices

21.   From August 2014 through the end of March 2018, Bolton Securities' clients held mutual fund shares that charged 12b-1 fees in their advisory accounts. During the same period, Bolton Securities also purchased some mutual fund shares for its clients that charged 12b-1 fees.

22.   During the same period, Bolton Securities represented to clients in its client brochure that it performed periodic account reviews to evaluate performance against relevant benchmarks and to determine if the investments remained consistent with the client's financial objectives and suitability needs. Bolton Securities also represented to clients in its client brochure that it monitored the receipt of selling compensation by its representatives to identify potential conflicts of interest.

23.   At the same time, Bolton Global Capital accepted payment of ongoing 12b-1 fees attributable to the mutual fund shares held in Bolton Securities' clients' accounts. In turn, Bolton Global Capital paid some of this 12b-1 compensation to Bolton Securities' IARs based on the 12b-1 fees generated from the IARs' advisory clients' accounts.

24.   Many mutual fund investments from which Bolton Global Capital received 12b-1 fees had a Non-12b-1 fee share class available to advisory clients such as Bolton Securities' clients, from which Bolton Global Capital, and in turn Bolton Securities' IARS, would not have received 12b-1 fees. Some of these Non-12b-1 fee share classes included minimum investment

amounts; some did not. Even where these Non-12b-1 fee share classes included minimum investment amounts, many fund families disclosed in regulatory filings that they would or may waive the minimum purchase amount for investors, like Bolton Securities' clients, who paid an asset-based advisory fee. Bolton Securities thus knew or should have known, and could have disclosed to its clients, that they had an opportunity to obtain Non-12b-1 fee shares, and Bolton Securities could have undertaken efforts to secure such shares for its clients.

25.     Moreover, as early as May 2014, one Bolton Securities IAR worked with the firm's vice president of trading, who was the son of Husband and Wife, to convert some advisory clients who paid an asset-based advisory fee from mutual fund share classes carrying 12b-1 fees to Non-12b-1 Shares that the same mutual funds made available to fee-paying advisory clients. Other fee-paying clients with other IARs, however, continued into 2017 to hold the same funds' shares that paid 12b-1 fees. As a result of Bolton Securities' negligence, certain of its clients paid higher costs and had lower returns than other similarly situated clients holding the same mutual funds.

26.     Despite the availability of Non-12b-1 fee share classes to its clients, Bolton Securities chose to continue the stream of 12b-1 fees to its affiliate and its IARs and to leave its clients uniformed about this conflict of interest. In doing so, Bolton Securities failed to disclose its economic incentive to make that choice for the financial benefit of its affiliated broker-dealer and their common owners such that the clients could decide whether or not to consent to a conflict that would entail them paying more for their mutual fund investments.

## IV.     Bolton Securities' Failure to Fully and Fairly Disclose Its 12b-1 Fee Conflicts

27.     As an investment adviser, Bolton Securities is a fiduciary for its advisory clients. As such, Bolton Securities owes its clients an affirmative duty of utmost good faith, is obligated to provide full and fair disclosure of all material facts, and has an affirmative obligation to

employ reasonable care to avoid misleading its clients. Bolton Securities' duty to disclose all material facts includes a duty to tell clients about all actual or potential conflicts of interest that might incline Bolton Securities and its representatives to render investment advice that is not disinterested, and how those conflicts could affect the advice provided to Bolton Securities' advisory clients. Bolton Securities was required to provide its advisory clients with disclosure sufficiently specific for the clients to understand the conflicts of interest concerning Bolton Securities' advice about their investments in different classes of mutual funds and to have an informed basis for consenting to or rejecting conflicts of interest. The purpose of this obligation is simple and grounded in what it means to be a fiduciary acting on behalf of a client or an agent acting on behalf of a principal. A fiduciary must act in its client's best interest. If the fiduciary has a conflict of interest, the fiduciary must make full and fair disclosure to the client, and the client must provide informed consent to the conflict of interest as disclosed.

28.     Bolton Securities' only disclosures to clients about the receipt of fees charged by mutual funds came in SEC-mandated disclosure forms for certain investment advisers. These forms are known as Form ADV, and more specifically Form ADV Part 2A. The Form ADV Part 2A is commonly referred to as an investment adviser's brochure. Investment advisers like Bolton Securities must file the brochure with the Commission and update it at least annually, and must provide their current brochure to advisory clients, including prospective clients prior to or concurrent with the execution of an advisory agreement. Brochures must include required disclosures about an investment adviser's business, including how the adviser is compensated. At least once a year, from 2014 through 2017, Bolton Securities filed an updated brochure with the Commission, posted a copy of the latest brochure to its publicly-available website, and

mailed or emailed every advisory client a summary of material changes to the brochure along with information on how to receive the latest brochure or view it on a publicly-available website.

29.     Bolton Securities knew or should have known that it was required by law to disclose conflicts of interest to its advisory clients in its brochure because, among other reasons, the instructions to Form ADV provided such guidance.

30.     From August 2014 through the end of 2017, Bolton Securities offered a generalized disclosure in its brochure to the effect that its IARs received a portion of certain fees charged by mutual funds. Specifically, it stated:

> A portion of fees charged by mutual fund companies (trails) are distributed to adviser agents and therefore also represent a potential conflict of interest.

This disclosure failed to disclose Bolton Securities' own conflicts of interest. This language failed to fully and fairly advise clients that Bolton Securities, distinct from its IARs, had a direct financial conflict of interest because its affiliate, Bolton Global Capital, also received and retained a portion of the 12b-1 fees. In addition, Bolton Securities failed to inform its clients that the "fees charged by mutual fund companies (trails)" were subject to substantial variation or that mutual funds offered various share classes, including shares that did not pay 12b-1 fees to Bolton Global Capital. Indeed, Bolton Securities' brochure disclosure did nothing to meaningfully inform clients about the nature of the conflict of interest, since it suggested that 12b-1 fees received by its affiliate and its IARs were an inevitable feature of investing in mutual funds. A reasonable reader could infer that the conflict of interest being disclosed consisted only in recommending mutual funds as an investment vehicle, as opposed to the selection of particular funds and particular share classes. Further, Bolton Securities failed to disclose that its affiliate's receipt of these 12b-1 fees was a product of Bolton Securities' choice to

advise clients to invest in or retain certain mutual funds and share classes of mutual funds that charged 12b-1 fees when other mutual funds and share classes of mutual funds did not charge these fees. Bolton Securities also failed to disclose to clients a significant aspect of its financial conflict: that investing, or remaining invested, in share classes that paid 12b-1 fees would generally reduce the overall return of such investments to the clients in comparison to Non-12b-1 share classes of the same mutual funds.

31.     These disclosure failures were omissions of material fact and were required to be disclosed fully and fairly with sufficient specificity to Bolton Securities' advisory clients in order for the clients to provide informed consent to Bolton Securities' conflict of interest. Further, Bolton Securities knew or should have known that it had a duty to disclose such information. Yet Bolton Securities failed to provide full and fair disclosure of all material facts and to employ reasonable care to avoid misleading its clients.

32.     In March 2017, Bolton Securities amended its brochure's 12b-1 fee disclosure to state the following:

> With regards to mutual fund products, Bolton receives 12(b) fees and other rebates from mutual fund companies, directly or through [a third-party service provider], for servicing assets held in client accounts. These fees and rebates are in addition to commissions, and other fees and expenses disclosed in a fund's prospectus fee table.

33.     Although this amended disclosure acknowledged the receipt of 12b-1 fees, it failed to disclose that its receipt of this compensation represented a conflict of interest for Bolton Securities and its supervised persons. This amended language also continued to incorrectly suggest that 12b-1 fees are charged by all mutual fund companies. Bolton Securities did not disclose the availability of funds and share classes of funds that did not pay any 12b-1 fees to it, its supervised persons, or its affiliated broker. Bolton Securities also failed to disclose that investing, or remaining invested, in share classes that paid 12b-1 fees would generally reduce the

overall return of such investments in comparison to Non-12b-1 share classes of the same mutual funds. These disclosure failures were omissions of material fact and were required to be disclosed to Bolton Securities' advisory clients, and Bolton Securities knew or should have known that it had a duty to disclose such information. Bolton Securities failed to provide full and fair disclosure of all material facts and to employ reasonable care to avoid misleading its clients.

## V.    Bolton Securities Engaged in Unlawful Undisclosed Principal Trading with Clients

34.    The Advisers Act prohibits any investment adviser from, directly or indirectly, acting as a principal for its own account, knowingly selling securities to, or purchasing securities from, a client without disclosing to such client in writing, before the completion of the transaction, the capacity in which the investment adviser is acting and obtaining the consent of the client to such transaction.

35.    Bolton Securities violated the Advisers Act when it used the principal trading account of Bolton Global Capital, a broker-dealer under common control with Bolton Securities, to engage in self-dealing transactions with its advisory clients, trading over $325 million worth of fixed income securities without making the required disclosures or obtaining the required consent. From November 2014 through March 2019 alone, by directing advisory client transactions to Bolton Global Capital's principal trading account, Bolton Securities enriched a broker that was under common control by over $505,000.

36.    Prior to these transactions, Bolton Securities did not provide appropriate pre-trading disclosure to advisory clients that it was directing fixed income trades to Bolton Global Capital's principal trading account, nor did Bolton Securities obtain client consent to that broker-dealer acting in that principal capacity.

37.     Bolton Securities' failures to disclose the use of a broker under common control to conduct principal trading were omissions of material facts that were required to be disclosed to Bolton Securities' advisory clients. Bolton Securities knew or should have known that it had a duty to disclose such information. Bolton Securities failed to disclose any such information, and to obtain the required consent, prior to engaging in principal trading with its advisory clients.

## VI.   Bolton Securities Failed to Adopt and Implement Written Policies and Procedures Reasonably Designed to Identify and Disclose Its Conflicts of Interest and Avoid Violating The Advisers Act Prohibition on Undisclosed Principal Trading

38.     From at least August 2014 through the end of March 2018, Bolton Securities did not adopt or implement policies or procedures reasonably designed to ensure full and fair disclosure of all conflicts of interest that might lead the firm or its supervised persons to give investment advice that is not disinterested. Although its business practices included a stream of 12b-1 fees generated from its clients' investments being paid to its affiliate and its IARs, Bolton Securities' policy simply called for "personnel to avoid activity that creates a conflict of interest." Bolton Securities did not tailor its policies and procedures to the firm's business and did not have any policies or procedures reasonably designed to identify or disclose the conflicts of interest caused by that practice. Bolton Securities also did not, despite its representations that it reviewed and monitored clients' accounts and supervised persons' receipt of selling compensation, have any policy or procedure reasonably designed to carry out this review with respect to client holdings of mutual funds or share classes of mutual funds that charged the 12b-1 fees that Bolton Global Capital and Bolton Securities' IARs received.

39.     From at least August 2014 through at least March 2019, Bolton Securities also lacked policies or procedures reasonably designed to disclose its use of a broker that was under common control to effect principal trading with advisory clients, or to obtain client consent to do the same, despite its practice of directing those trades to Bolton Global Capital.

40.     Prior to the filing of this complaint, the Commission's enforcement staff provided Bolton Securities with notice of the staff's intention to recommend institution of this enforcement action and described the factual bases of the recommended charges. After providing this notice, Bolton submitted a written response.

41.     In this written response, Bolton Securities failed to acknowledge the wrongfulness of its conduct. Bolton Securities asserted that its 2014 disclosure, which stated that "a portion of fees charged by mutual fund companies (trails) are distributed to adviser agents and therefore also represent a potential conflict of interest," was sufficient to meet its fiduciary duty to fully and fairly disclose all of Bolton Securities' material conflicts of interest. Bolton Securities also denied that it had an ongoing duty to disclose the availability of Non-12b-1 Shares to advisory clients whose mutual fund holdings had been transferred in from other advisory firms. From Bolton Securities' asserted perspective, it was acceptable to conduct annual account reviews that disclosed disparate treatment of certain clients who received the financial benefit of being invested in Non-12b-1 Shares, but remain silent about the availability of those share classes for other similarly situated clients paying 12b-1 fees, a portion of which landed in the pockets of Bolton Securities' affiliated broker under common control as well as Bolton Securities' IARs. Bolton Securities offered no assurances that it would amend its written policies and procedures so as to be reasonably designed to prevent any future failures to identify and disclose material conflicts of interest that resulted in disparate treatment of similarly situated advisory clients.

42.     Bolton Securities also failed to acknowledge the wrongfulness of its conduct in using the principal trading account of its affiliated broker-dealer under common control to engage in self-dealing transactions with its advisory clients without making the required disclosures or obtaining the required consent. Bolton Securities offered no assurances that it

would amend its written policies and procedures so as to be reasonably designed to prevent future similar principal trading violations.

43.     Bolton Securities has not implemented written policies and procedures reasonably designed to prevent violations of the Advisers Act and its Rules by ensuring the disclosure of conflicts of interest created by its receipt of 12b-1 fees, as alleged herein.

44.     Bolton Securities also has not adopted a reasonably designed, and implemented, written policy for identifying material conflicts of interest.

### FIRST CLAIM FOR RELIEF
#### (Violation of Section 206(2) of the Advisers Act)

45.     The Commission repeats and incorporates by reference the allegations in paragraphs 1-44 of the Complaint as if set forth fully herein.

46.     Bolton Securities is an investment adviser defined by Section 202(a)(11) of the Advisers Act [15 U.S.C. § 80b-2(a)(11).

47.     Bolton Securities, while acting as an investment adviser, directly or indirectly, by use of the mails or means and instrumentalities of interstate commerce engaged in transactions, practices, and courses of businesses which operated as a fraud or deceit upon clients or prospective clients.

48.     By reason of the foregoing, Bolton Securities violated, and unless enjoined there is a reasonable likelihood that it will continue to violate, Section 206(2) of the Advisers Act [15 U.S.C. §§ 80b-6(2)].

### SECOND CLAIM FOR RELIEF
#### (Violation of Section 206(3) of the Advisers Act)

49.     The Commission repeats and incorporates by reference the allegations in paragraphs 1-48 of the Complaint as if set forth fully herein.

50.     Bolton Securities, while acting as an investment adviser, directly or indirectly, by use of the mails or means and instrumentalities of interstate commerce, and acting as principal for its own account, knowingly sold securities to or purchased securities from clients without disclosing to its clients, in writing, before the completion of these transactions, the capacity in which it was acting and without obtaining the clients' consent to the transactions.

51.     By reason of the foregoing, Bolton Securities has directly or indirectly violated, and unless enjoined will likely again violate, Section 206(3) of the Advisers Act [15 U.S.C. § 80b-6(3)].

### THIRD CLAIM FOR RELIEF
### (Violation of Sections 206(4) of the Advisers Act and Rule 206(4)-7 thereunder)

52.     The Commission repeats and incorporates by reference the allegations in paragraphs 1-51 of the Complaint as if set forth fully herein.

53.     Section 206(4) of the Advisers Act [15 U.S.C. § 80b-6(4)] provides that it is unlawful for an investment adviser to engage in an act, practice, or course of business which is fraudulent, deceptive, or manipulative. It further states that the SEC shall issue rules to define and prescribe measures to prevent such misconduct. Rule 206(4)-7 issued under the Advisers Act [17 C.F.R. § 275.206(4)-7] requires, among other things, that investment advisers registered with the Commission adopt and implement written policies and procedures reasonably designed to prevent violations, by the investment adviser and its supervised persons, of the Advisers Act and its rules. Such investment advisers must also review the adequacy of those policies and procedures and the effectiveness of their implementation, at least annually.

54.     Bolton Securities failed to adopt and implement written policies and procedures reasonably designed to prevent the firm from violating the Advisers Act by failing to disclose

fully and fairly the material conflicts of interest created by its financial interest in 12b-1 fees; and created by conducting principal trading through its broker-dealer under common control.

55.     Bolton Securities also failed to adopt and implement written policies and procedures reasonably designed to prevent its violation of the principal trading restriction set forth in Section 206(3) of the Advisers Act.

56.     By reason of the foregoing, Bolton Securities has directly or indirectly violated, and unless enjoined will likely again violate, Section 206(4) of the Advisers Act [15 U.S.C. § 80b-6(4)] and Rule 206(4)-7 thereunder [17 C.F.R. § 275.206(4)-7].

## PRAYER FOR RELIEF

WHEREFORE, the Commission requests that this Court:

A.     Enter a permanent injunction restraining Bolton Securities, as well as its agents, servants, employees, attorneys, and other persons in active concert or participation with it, from directly or indirectly engaging in the conduct described above, or in conduct of similar purport and effect, in violation of Sections 206(2), 206(3) and 206(4) of the Advisers Act [15 U.S.C. §§ 80b-6(1)–(2)] and Rule 206(4)-7 thereunder [17 C.F.R. § 275.206(4)-7];

B.     Require Bolton Securities to disgorge its unjust enrichment, plus prejudgment interest;

C.     Order Bolton Securities to pay an appropriate civil penalty pursuant to Section 209(e) of the Advisers Act [15 U.S.C. § 80b-9(e)];

D.     Retain jurisdiction over this action to implement and carry out the terms of all orders and decrees that may be entered; and

E.     Award such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the Commission demands a jury trial in this action of all issues so triable under the claims in this Complaint.

Respectfully submitted,

/s/Richard M. Harper II
Richard M. Harper II (Mass. Bar No. 634782)
Michael C. Moran (Mass. Bar No. 666885)
Robert Baker (Mass. Bar No. 654023)
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
Boston Regional Office
33 Arch Street, 24th Floor
Boston, MA 02110
(617) 573-8979 (Harper direct)
(617) 573-8931 (Moran direct)
(617) 573-4590 (fax)
harperr@sec.gov (Harper email)
moranmi@sec.gov (Moran email)

Dated: November 4, 2019